IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MIRANDA BETH PURCELL, | ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) Case No. 1:23-cv-1183 (PTG/JFA) |
| PRINCE WILLIAM COUNTY, | ) ) |
| *Defendant.* | ) ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's Motion to Dismiss ("Motion"). Dkt. 7. Defendant filed its Motion on February 1, 2024. *Id.* Plaintiff, who is proceeding *pro se*, did not file a response in opposition to Defendant's Motion.[1] On March 14, 2024, the Court held a hearing and Plaintiff made oral arguments in response to the Motion. *See* Dkt. 10. This Court took the matter under advisement to consider both Defendant's papers as well as Plaintiff's oral representation. For the reasons stated below, Defendant's Motion is granted in part and denied in part.

### Background

Plaintiff Miranda Beth Purcell ("Plaintiff") was employed by Defendant Prince William County ("Defendant") in its Public Works/Neighborhood Services Department. *See* Dkt. 1 ("Compl.") at 8. Plaintiff alleges that Defendant has engaged in widespread gender discrimination with respect to its hiring processes, and specifically takes issue with "three recent hiring decisions." *See id.* at 8, 19.

---

[1] When it filed its Motion, Defendant provided a *Roseboro* notice, informing Plaintiff that her case could be dismissed on the papers if she failed to file a written opposition to the motion. Dkt. 7; *see also* Local Civil Rule 7(K) of the Eastern District of Virginia.

In July 2019, Plaintiff became a Senior Inspector after completing the requirements necessary for the position. *Id.* at 10. Then, on October 4, 2019, a position for the Chief Property Code Enforcement Inspector opened. *Id.* Plaintiff did not apply for the position because she "knew that other inspectors with the preferred experience had already applied." *Id.* According to Plaintiff, four candidates applied and were interviewed for the position; the position was ultimately given to another employee, Mr. Thomas Munday ("Munday"), whom Plaintiff alleges "did not possess several certifications, and had limited experience with Zoning code enforcement." *Id.*

Plaintiff further alleges that after several employees complained about Munday's promotion, the Chief Property Code Inspector position was rewritten, reposted, and closed on January 22, 2020, without other candidates' knowledge. *Id.* According to Plaintiff, the reposted job bulletin removed the training requirements that were included in the original bulletin. *Id.* Plaintiff alleges that no justification was given as to "why the job was reposted with different criteria." *Id.* at 11. Then, on January 24, 2020, Paul Lynch ("Mr. Lynch"), the hiring manager, announced that Munday was once again promoted as the renamed Neighborhood Services Division Area Chief. *Id.* at 10. According to Plaintiff, two female employees, who were "already Senior Inspectors for the Department," interviewed for the position but were ultimately not selected. *Id.* at 10–11.

On July 2, 2021, the supervisory position of Special Projects Chief opened. *Id.* at 11. Plaintiff applied for the position on July 6, 2021. *Id.* On August 30, 2021, Mr. Lynch announced that Munday had been selected for the position. *Id.* According to Plaintiff, in addition to herself, two other female employees who were Senior Inspectors and "possessed all of [their] certifications" applied for the position but were not selected. *Id.* Plaintiff alleges that unlike

2

herself and the other women who applied for the position, Munday lacked many of the preferred skills and qualifications that were listed on the position's job bulletin. *See id.*

Following Munday's promotion to Special Projects Chief, his previous position of Code Enforcement Supervisor became available. Plaintiff did not apply for this position. *Id.* The position went to a Michael O'Neil, whom Plaintiff alleges "did not have any professional Zoning certifications, had not completed his training, and told us that he did not have any supervisory experience." *Id.* According to Plaintiff, there was one female employee, Jessica Wilfong, who applied and was qualified for the position, but did not get it over Michael O'Neil. *Id.*

On October 13, 2021, Plaintiff met with Mr. Lynch to discuss the Special Projects Chief interview process and her concerns about female employees being passed up for promotions within the Department. *Id.* at 12. Plaintiff alleges that during the meeting, Mr. Lynch told Plaintiff that she could "believe [her] narrative" and that she was "painting a picture" with respect to her concerns of gender discrimination. *Id.* Then, in response to Plaintiff's statement that Munday was not as well-qualified for the Special Projects Chief position as Plaintiff or the two other women who applied, Mr. Lynch told Plaintiff that Munday's prior experience within a police department is what made him the best candidate for the job. *Id.*

On November 17, 2021, Plaintiff submitted her EEOC Charge, alleging gender discrimination. *Id.* at 13. That same day, she emailed Mr. Lynch's supervisor, Tom Smith, requesting a meeting to discuss her concerns of gender discrimination and unfair hiring practices with respect to the last three supervisory positions. *Id.* On November 22, 2021, Plaintiff met with Tom Smith and alleges that during the meeting, Smith said that he "knew that he inherited a problem with Paul [Lynch] but didn't know how to resolve it." *Id.* Smith also told Plaintiff that

3

he would conduct an "external audit" of the hiring process for the last two supervisory positions. *Id.* Ultimately, no audit was conducted. *See id.* at 14.

On February 14, 2022, Plaintiff submitted her letter of resignation which went into effect on February 28, 2022. *Id.* at 14–15. On June 8, 2023, the EEOC issued Plaintiff a Notice of Right to Sue. Dkt. 1-2. Plaintiff filed this instant action on September 5, 2023. *See* Dkt. 1. In her Complaint, Plaintiff alleges that Defendant discriminated against Plaintiff on the basis of sex by denying her a promotion to Special Projects Chief. Compl. at 2–6, 8. Plaintiff seeks $72,000 in damages, which includes $48,000 in punitive damages for the "emotional stress caused by the discrimination, for having to leave the jurisdiction to have fair treatment, and for the lack of actions taken to remedy the discriminatory practices." *Id.* at 6.

## Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss when a complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This pleading standard does not require detailed factual allegations; rather, the plaintiff must plead factual content allowing the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, a complaint is insufficient if it relies upon "naked assertions" and "unadorned conclusory allegations" devoid of "factual enhancement." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679 and *Twombly*, 550 U.S. at 557). When reviewing a motion brought under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I du Pont de Nemours & Co. v.*

4

*Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (internal citations omitted). The Court must construe *pro se* complaints liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "[p]rinciples requiring generous construction of *pro se* complaints are not ... without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

## Discussion

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Here, Plaintiff alleges that Defendant discriminated against her on the basis of sex by denying her the promotion to Special Projects Chief. *See* Compl. at 8 ("Prince William County discriminated against me by denying a promotion to Special Projects Chief because of my gender in violation of Title VII."); *see also* Dkt. 8-1 ("EEOC Charge") at 1 (discussing the Special Projects Chief position).

As an initial matter, the Court notes that Defendant argues that the Court should dismiss any discrimination claim based on the Chief Property Code Enforcement Inspector and Code Enforcement Supervisor positions. At the March 14, 2024 motion hearing, Plaintiff reiterated that the discriminatory, failure to promote claim was limited to the Special Projects Chief position and did not extend to the Chief Property Code Enforcement Inspector and Code Enforcement Supervisor positions. Those factual allegations were only included to provide further support and factual context for Plaintiff's discrimination claim. Thus, Defendant's Motion is denied as moot with respect to this argument.

I.   **Plaintiff Has Sufficiently Pled a Claim of Gender/Sex Discrimination in Being Denied the Special Projects Chief Position**

In its Motion, Defendant argued that Plaintiff has failed to state a plausible claim that she was denied the Special Projects Chief position because of her gender/sex. Dkt. 8 at 9. As an initial matter, the Court notes that Defendant has argued that Plaintiff must establish a *prima facie* case of discrimination. Dkt. 8 at 8. Defendant, however, is incorrect. In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), the Supreme Court held that "an employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss," because "[t]he prima facie case . . . is an evidentiary standard, not a pleading requirement." *Id.* at 510, 515. Instead, a Title VII plaintiff is "required to allege facts to satisfy the elements of a cause of action created by that statute." *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). For a discriminatory failure to promote claim, a plaintiff must plead factual content indicating that "(1) [she] is a member of a protected group, (2) there was a specific position for which [she] applied, (3) [she] was qualified for that position, and (4) [her] employer] rejected [her] application under circumstances that give rise to an inference of discrimination." *Agbati v. Virginia Dep't of Agric. & Consumer Servs.*, No. 3:19-cv-513, 2022 WL 5101822, at *3 (E.D. Va. Oct. 4, 2022) (internal citation and quotation omitted).

Here, Defendant argues that Plaintiff cannot satisfy the fourth element of a failure to promote claim because Plaintiff "does not include facts showing that she was more qualified than the person chosen for the position or that there was any inference of gender discrimination in the decision." Dkt. 8 at 9. Defendant further contends that Plaintiff and Munday were not similarly situated because (1) "Mr. Munday was already in a supervisory position and therefore ranked higher than Plaintiff when he was chosen for the job[;]" and (2) Munday had over 33 years of

6

experience working in a police department, which further made him qualified for the position. *Id.* at 10.

As to Defendant's first contention that Plaintiff fails to plead facts that give rise to gender/sex discrimination, the Court notes that the Fourth Circuit has found that a showing that a member outside of the protected class received a promotion instead of the plaintiff is sufficient to create an inference of discrimination. *See Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994) (finding that the plaintiff, who was African American, satisfied the fourth element by showing that the job position was filled by a white applicant). Here, Plaintiff has pled that Munday, a male employee, received the promotion to Special Projects Chief instead of Plaintiff despite the fact that, as Plaintiff alleges, she was more than qualified for the position. Dkt. at 8. Additionally, the Complaint includes factual allegations related to other instances of female employees not being selected for positions; job postings being re-written to fit a male applicant over female applicants; and a supervisor's statement that he had inherited a problem with Mr. Lynch when Plaintiff met with the supervisor to discuss alleged discrimination and unfair hiring practices. Compl. at 10–11, 13.

As further support of her claim, Plaintiff notes that the job bulletin for the Special Projects Chief position asked for "[k]nowledge and experience in Zoning and Property Maintenance Code enforcement" and listed a preference for "[e]ducates and trains inspectors on code and ordinance[.]" Compl. at 11; *see also* Dkt. 1-1 at 54. Plaintiff alleges that whereas she had obtained the necessary training and certifications for the position, including by becoming certified as a zoning administrator and Erosion & Sediment Control Inspector, Munday lacked similar training and certifications. Compl. at 11. Moreover, while Plaintiff's Complaint does plead facts showing that Munday had a higher supervisory ranking than Plaintiff, the Court notes that the job bulletin

7

for the Special Projects Chief position, which Plaintiff attached as an exhibit to her Complaint, simply stated that "multi-year supervisory experience [was] required[,]" and did not identify a need for a particular ranking. *See* Dkt. 1-1 at 54. Plaintiff's Complaint sufficiently alleges that Plaintiff, like Munday, had several years of supervisory experience by the time the Special Projects Chief position opened. *See* Compl. at 10 (noting that Plaintiff became a Senior Inspector in July 2019 and Munday was promoted to the position of Chief Property Code Enforcement Inspector in January 2020).

In short, the Court finds that Plaintiff has sufficiently alleged that she is a member of a protected class [female]; applied for a specific position that she was qualified for; and that she was denied the position in favor of a male candidate who lacked the same qualifications she had for the position. At this motion to dismiss stage of the proceedings, these allegations are sufficient to allow Plaintiff to proceed with a discriminatory, failure to promote claim for the Special Projects Chief position.

## II.   Plaintiff's Claim for Punitive Damages Must be Dismissed as a Matter of Law

Next, Defendant argues that irrespective of whether Plaintiff has plausibly stated a claim of gender/sex discrimination, Plaintiff's claim of entitlement to punitive damages must nevertheless be dismissed because Defendant cannot be sued for said damages under Title VII. Dkt. 8 at 12. The Court agrees.

Under Title VII, "a complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision)[.]" 42 U.S.C. § 1981a(b)(1). Under Virginia law, "[c]ounties [are] political subdivisions of the Commonwealth[.]" *Seaboll v. Cty. of Albemarle*, 724 S.E.2d 715, 716 (2012). Therefore, Defendant, as a political subdivision of the Commonwealth of Virginia, cannot be sued for punitive

8

damages under Title VII. Thus, Plaintiff's claim for punitive damages must be dismissed with prejudice.

Accordingly, and for the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion to Dismiss (Dkt. 7) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** with respect to Plaintiff's claim for punitive damages but **DENIED** in all other respects.

April 23, 2024
Alexandria, Virginia

/s/
Patricia Tolliver Giles
United States District Judge